**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sherman SHARPE, Defendant–Appellant.**

No. 92–1984.

United States Court of Appeals,
Sixth Circuit.

Argued May 4, 1993.

Decided June 11, 1993.

Lynn A. Helland (argued and briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff-appellee.

Kevin S. Ernst (argued and briefed), Davis, Culpepper & Saroki, Detroit, MI, for defendant-appellant.

Before: KENNEDY and SILER, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Attorney Sherman Sharpe appeals his multiple-count conviction under 18 U.S.C. § 645. We affirm the district court's July 28, 1992 judgment for the following reasons.

I.

Defendant-appellant Sherman Sharpe ("Sharpe" or "appellant") was a practicing attorney who, in 1986, was admitted to the panel of Chapter 7 bankruptcy trustees for the Eastern District of Michigan. About the time Sharpe began accepting cases, he met with Marion Mack ("Mack"), the Assistant United States Trustee for the Eastern District of Michigan. Mack told Sharpe that bankruptcy practice required a serious commitment and could not be taken lightly, and warned Sharpe not to "mess with the money" of any bankruptcy estate.

In December 1986, Sharpe was appointed trustee for the estate of Jim's Garage, a restaurant in downtown Detroit. The estate had about $200,000 in cash assets when Sharpe was appointed trustee. On April 14, 1987, the United States Trustee wrote Sharpe a letter informing him that he had not filed the first interim report for the estate of Jim's Garage. Sharpe subsequently filed the report.

On November 16, 1987, approximately seven months after filing the first report, the United States Trustee ordered that Sharpe show cause for not filing the second interim report in the estate of Jim's Garage. Sharpe filed the second interim report on December 1, 1987.

Beginning on December 18, 1987, Sharpe began to issue checks to himself that were drawn on the savings and checking accounts of the Jim's Garage estate. Sharpe made 12 such withdrawals totalling approximately $80,000 over the next 16 months. None of the withdrawals were used to pay for expenses incurred in administering the estate.

In 1988, the United States Trustee filed a motion to remove Sharpe as trustee from his appointment in the estate of Domeby Metal Products for not properly noticing a sale. If the motion was successful, Sharpe could have been removed from all of his bankruptcy trusteeships. On August 4, 1988, Sharpe entered into a voluntary probation agreement whereby Sharpe agreed to file the necessary interim reports in all of his cases.

In June 1989, the United States Trustee informed Sharpe that if he did not file his past-due interim reports, the Jim's Garage estate would be removed from his control. Less than three weeks later, Sharpe repaid $80,000 to the bankruptcy estate and provided certain limited records to the United States Trustee in connection with the Jim's Garage estate including photocopies of ledger sheets which omitted all of the savings and

checking account withdrawals that he had issued to himself.

On August 16, 1989, Sharpe sent an interim report regarding the Jim's Garage estate to the United States Trustee. The report listed the transactions of the estate, including the $80,000 deposit on July 14, 1989, but did not list to whom disbursements were made or from whom receipts were received. After the United States Trustee questioned Sharpe regarding the suspicious disbursements, Sharpe deposited an additional $14,138.59 to the bankruptcy estate on August 18, 1989, purportedly representing interest on the money that Sharpe claimed he had invested.

On December 19, 1991, the grand jury indicted Sharpe for twelve offenses arising out of his administration of the Jim's Garage bankruptcy estate. Specifically, Sharpe was charged with 12 counts of "embezzlement" under 18 U.S.C. § 153, 12 counts of "conversion" under 18 U.S.C. § 645, and one false statement count under 18 U.S.C. § 1001.

18 U.S.C. § 153 provides:

Whoever knowingly and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor which came into his charge as trustee, custodian, marshal, or other officer of the court, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

*Id.* 18 U.S.C. § 645 provides:

Whoever, being a United States marshal, clerk, receiver, referee, trustee, or other officer of a United States court, or any deputy, assistant, or employee of any such officer, retains or converts to his own use or to the use of another or after demand by the party entitled thereto, unlawfully retains any money coming into his hands by virtue of his official relation, position or employment, is guilty of embezzlement and shall, where the offense is not otherwise punishable by enactment of Congress, be fined not more than double the value of the money so embezzled or imprisoned not more than ten years, or both; but if the amount embezzled does not exceed $100, he shall be fined not more than $1,000 or

imprisoned not more than one year, or both.

It shall not be a defense that the accused person had any interest in such moneys or fund.

*Id.*

Sharpe's trial commenced on March 31, 1992. Sharpe presented witnesses, but did not testify on his own behalf. His attorney argued to the jury that Sharpe had invested the estate's money under the mistaken belief that bankruptcy law authorized him to do so. On April 7, 1992, the district court judge directed a verdict with respect to the twelve counts under 18 U.S.C. § 153 because the government had not established fraud. The jury subsequently returned a guilty verdict on all twelve counts under 18 U.S.C. § 645, but acquitted Sharpe of the single count under 18 U.S.C. § 1001. On July 28, 1992, the district court judge sentenced Sharpe to twelve months in prison on each of the twelve counts (to run concurrently), to be followed by a three-year term of supervised release.

Sharpe filed a timely notice of appeal on August 7, 1992. On August 20, 1992, the district court judge issued an order staying Sharpe's sentence pending appeal.

## II.

### *Whether 18 U.S.C. § 645 Requires Proof of Fraud*

The evidence reveals that, after being warned not to tamper with the money in the bankruptcy estates that he administered, Sharpe appropriated approximately $80,000 from the Jim's Garage estate. Sharpe deposited most of this money into his personal and business checking accounts. Sharpe kept no records of the money he took from the estate, and did not disclose his taking to the United States Trustee on the interim financial reports he prepared.

Though Sharpe concedes that a bankruptcy trustee is an officer of the court, Sharpe maintains that section 645 requires more than a wrongful conversion. Specifically, Sharpe claims that the crime requires fraudulent intent because the term "embezzlement" implies that Congress intended to incorporate the common law definition of em-

bezzlement into section 645. Because the district court did not find fraud under section 153, Sharpe contends that his section 645 convictions must be reversed.

■ The structure of section 645 reveals that Congress defined "embezzlement" within the section rather than by incorporating any common law definition of "embezzlement." The statute states that a court officer who retains or converts certain property to his own use is guilty of embezzlement. Had Congress intended to incorporate some other definition of embezzlement, it would not have defined the term within the section.

Sharpe also contends that the district court erred by employing jury instructions "which did not require the prosecution to prove beyond a reasonable doubt that any conversion was done fraudulently." Appellant's Brief at 26–27. The jury instructions provided (in relevant part):

> Counts 2, 4, 6, 8, 10, 12, 14, 16, 19, 21, 23 and 25 of the indictment charge that on various dates the Defendant, who was then a trustee and officer of the court in the bankruptcy estate of Jim's Garage, knowingly converted to his own use or to the use of another, various amounts of money that came into his possession by virtue of his official position.

> The United States law says that whoever, being a trustee or other officer of the United States Court, converts to his own use or to the use of another, money coming into his hands by virtue of his official position, is guilty of embezzlement.

> The Government must prove the elements beyond a reasonable doubt. First, that the Defendant was a trustee or other officer of the United States Court.

> Two, that the money came into his hands by virtue of his official position. And three, that the Defendant converted any part of this money to his own use or to the use of another without lawful authority.

> I instruct you that a person appointed to be a trustee for a bankruptcy estate is an officer of the court. You've heard evidence that the Defendant returned money that he withdrew from the bankruptcy estate of Jim's Garage.

> If you find that Defendant used money from this bankruptcy estate for his own purposes, and that he did not reasonably believe in good faith that he was properly authorized by law to do so, it is not a defense that he might later have paid the money back. This is so even if he meant to pay the money back all along. The crime in this case is completed.

> . . . .

> If, on the other hand, you find that the Defendant acted under a good faith belief, even though mistaken that he had authority under Section 345 of the bankruptcy code to act as he did, you must find the Defendant not guilty.

> The Defendant argues that he believed that he was authorized by the bankruptcy law to use the money of the Jim's Garage estate for his own purposes. If Defendant had a reasonable belief that his actions were authorized by law at the time of any particular taking of money that is charged in the indictment, even though Defendant may have been mistaken in his belief, then you must find him not guilty of the counts that relate to that particular transaction.

> [E]vidence that the Defendant acted as he did because he was ignorant of the law may be considered by you in determining whether he acted knowingly or fraudulently.

> However, if, after considering all of the evidence, you find beyond a reasonable doubt that the Defendant knew that he could not use the money in the bankruptcy estate for his own purposes, the re-payment and intent to repay a loan are not a defense to any of the charges in the indictment.

Joint Appendix at 266–69.

■ These instructions clearly conveyed to the jury that Sharpe should be found guilty of violating section 645 if he deliberately took financial advantage of his confidential relationship with the estate. Sharpe did not object to these jury instructions in district court. In fact, the instructions that the jury received were jointly submitted by the government and the appellant. "[N]ot even the plain error doctrine permits reversal on the

ground that the trial court granted a defendant's request to charge." *United States v. Young*, 745 F.2d 733, 752 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). *See also United States v. Thurman*, 417 F.2d 752, 753 (D.C.Cir.1969) ("Appellant not only failed to raise any objection to the court's charge, but it is clear that his retained trial counsel specifically requested and urged the trial court to give the instruction now objected to. In such circumstances we decline to find error, plain or otherwise."), *cert. denied*, 397 U.S. 1026, 90 S.Ct. 1269, 25 L.Ed.2d 535 (1970).

Because the evidence reveals that Sharpe appropriated the bankruptcy estate's money for personal benefit in violation of his authority as trustee, and because Sharpe cannot demonstrate that the district court's jury instructions constituted plain error, we reject Sharpe's first assignment of error.

### Whether 18 U.S.C. § 153 Precludes 18 U.S.C. § 645's Applicability

Sharpe persuaded the district court to dismiss the section 153 counts by maintaining that 18 U.S.C. § 153 requires that the government prove fraud. Now that the jury has convicted him under section 645, Sharpe maintains that 18 U.S.C. § 153 governs his conduct and precludes section 645's applicability due to section 645's exclusivity provision. We disagree.

Sharpe invited the error that he now alleges. Specifically, the district court dismissed the section 153 charges because the government failed to demonstrate that Sharpe had accomplished the taking through fraudulent means.

■ "The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit." *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir.1991) (citation omitted). *See also United States v. Schaff*, 948 F.2d 501, 506 (9th Cir.1991) ("Under the invited-error doctrine, an error that is caused by the actions of the complaining party will cause reversal 'only in the most exceptional situation.'") (citations omitted);

*United States v. Baytank, Inc.*, 934 F.2d 599, 606–07 (5th Cir.1991) ("Baytank, however, not only failed to object to the allegedly overbroad portion of the court's charge, but that portion of the charge is the precise language requested by Baytank. A party generally may not invite error and then complain thereof. This Court has made clear that the invited error doctrine applies to jury instructions as well as evidentiary rulings.") (citations omitted).

■ Sharpe caused the district court to dismiss the section 153 counts by persuading the court that section 153 requires proof of fraud. Having accomplished that, Sharpe now argues that section 153 governs his conduct, and that section 645, by its terms, does not. Pursuant to the invited-error doctrine, we reject Sharpe's claim.

■ Though the invited-error doctrine precludes Sharpe's claim, we note that the principle is well-settled that, when two criminal statutes apply to the same conduct, the government may choose the statute under which it will proceed unless Congress has clearly intended that one supplant the other. *United States v. Oldfield*, 859 F.2d 392, 398 (6th Cir.1988). There is no such clear intention in 18 U.S.C. § 645.

Though 18 U.S.C. § 645 provides that a violator "shall, where the offense is not otherwise punishable by enactment of Congress," be exposed to certain penalties, it is significant that this provision is contained in the penalty portion of the statute, not in the portion that defines the offense. Had Congress intended to render section 645 inapplicable if another statute applied, it could have done so simply by placing the relevant clause before the words "is guilty of embezzlement." The fact that Congress put this clause in the punishment section indicates its intent that section 645 not create disparate punishments for conduct covered by other statutes.

■ Though Sharpe invokes the "rule of lenity" in support of his interpretation of section 645, the rule of lenity applies only if doubt exists about a statute's scope after resorting to all other methods of statutory construction. *Moskal v. United States*, 498 U.S. 103, 111 S.Ct. 461, 112 L.Ed.2d 449

(1990). Because Congress did not clearly express its intent to supplant 18 U.S.C. § 645, we need not invoke the "rule of lenity."

Because Sharpe invited the error that he now complains of, and because section 153 does not preclude section 645's applicability, we reject Sharpe's second assignment of error.

### Double Jeopardy

On appeal, Sharpe maintains that the double jeopardy clause of the Fifth Amendment precluded the jury's consideration of section 645 once the district court determined that the government had failed to prove fraud under section 153.

■ The double jeopardy clause protects three interests: avoiding a second prosecution for the same offense following acquittal; avoiding a second prosecution for the same offense following a conviction; and, avoiding multiple punishments for the same offense. *United States v. Barrett*, 933 F.2d 355, 360 (6th Cir.1991). We do not have a situation of multiple punishments because the section 153 charges were dismissed, and the protection against multiple prosecutions is not implicated when a defendant faces multiple charges in a single proceeding. *Id.*

■ The district court dismissed the section 153 charges after finding that the government had failed to prove fraud. Because 18 U.S.C. § 645 does not require proof of fraud, the district court did not violate the double jeopardy clause by submitting the section 645 counts to the jury. We therefore reject Sharpe's third assignment of error.

### III.

We AFFIRM the district court's July 28, 1992 judgment for the aforementioned reasons.